Ms. Pitaway, whenever you're ready. And Ms. Pitaway, we know that you, too, are court-appointed for your client, Mr. Rogers, so we want to thank you on his behalf and on behalf of the court for all the assistance that you've provided and continue to provide. We do appreciate it. Thank you, Your Honor. Lydia Pitaway speaking. May it please the court, counsel, turning to Issue 2 regarding the evidence excluded under Rule 412, commonly referred to as the Rape Shield Act. The trial court erred when it excluded evidence of the victim's prior sexual activity during Mr. Rogers' sentencing hearing. The government's misrepresentations to the trial court detracted from the actual facts of his case. Mr. Rogers should have been allowed to rebut the government's misrepresentations so the trial court could properly weigh the sentencing factors under 3553A. The government opened the door to this issue by referring to the victim several times as an innocent child, stating that the victim was unable to resist and the inferences that force was involved. There are several determinative facts that support admitting the evidence. First... Counsel, this is Lisa Branch. Just sort of as an initial matter on this point, the district court indicated at sentencing that it would consider the evidence of the statutory rape cases and SW's drug use with other adult men. Why wasn't this sufficient consideration of this evidence? The trial court excluded that the cases were of a sexual nature and what the court specifically said in the transcript was that it would consider using drugs with older men in the presence of older men, not that she had sex with them. So the entire context of the sexual nature of those cases, that was left out, that was excluded, and that was relevant and intrinsic to rebut the misrepresentations. The representation that she was an innocent victim, that has a sexual connotation that could be presumed or could be inferred, and so in order to rebut that presumption. The other thing that is intrinsically relevant to the sexual nature of the other cases is that this victim had known how to seek assistance to get out of situations where there was the illegal sexual activity going on. This victim, for the two other cases that were involved where she was at the homes of older men and had the sexual activity with them, she had reported them to law enforcement and she had remained involved in the prosecution against them during the time she was with Mr. Rogers. Counsel, how is this evidence of the victim's sexual history relevant in the sentencing phase? Under the 3553 factors for sentencing, one of the considerations for the trial court would be the impact on the victim, and that would be significant where there's representations that she was an innocent child who could not resist. And so for purposes of the sentencing factors under 3553, A, in fashioning a sentence that would be appropriate and reasonable under the circumstances, the court should have had all the information to be able to weigh the impact on the victim. But you would concede, counsel, that no one can consent to the making or distribution of child pornography, correct? Absolutely, Your Honor. And Mr. Rogers was going to be punished for it. The question was where on the continuum and where in the range he would be sentenced for it. He faced a minimum of 15 years imprisonment and he faced a maximum of 90 years imprisonment. And 40 years under the actuarial table would have been a life sentence. So where the judge would sentence Mr. Rogers in this range was of paramount importance. Representations that affected his considerations could have resulted in months or years in a different sentence. And the other aspect is also that even though the victim cannot consent and even though the activity was illegal, there's also the question of how the law would delineate the impact on the victim based on the age. And I want to draw the court's attention to a few different laws where there is delineation of how offenses are treated based on the age of the victim. One of those is under Chapter 2A3.2. Now, obviously, the case at bar is under 2G. But just to highlight the laws of fact, on 2A3.2, these are the guidelines for criminal sexual abuse of a minor under the age of 16. And the commentary defines a minor as an individual who has not attained the age of 16. Under the commentary, the guidelines use the word voluntary to describe victim activity that is not under force or compulsion. Obviously, that activity is still legal. Obviously, it's still unconsensual. But this is the guidelines language. Under the sentencing guidelines, activity with a victim under the age of 12, and this is under 2G, the guidelines that are issued in this case, there's an enhancement of four levels for any activity with a minor under the age of 12. And then there's a two-level enhancement for activity with a minor under the age of 16. Under state statutory rape laws, those are also laid out according to the victim's age. And the victim's age delineates the seriousness of the offense. So even though it's unconsensual, even though it's illegal, there's still this delineation under the law in how a victim's age may impact the seriousness of offense. This is Jill Pryor. I want to turn your attention to the enhancement for sadistic or masochistic depictions. As I understand the law in this circuit, we have never held that depictions that are merely humiliating or degrading qualify for this enhancement. Is that right? I think there are some trial courts have believed that that is the current law by a per se application. But I'm talking about our court has never done that. Is that right? I do not believe so, Your Honor. Okay. But two other circuits have decided that the enhancement can apply where what is depicted as humiliating or degrading even if there's no pain caused. And I'm wondering why we should not agree with those circuits. Yes, Your Honor. In the way that the – and I want to draw back and piggyback onto the way that the law delineates age and the way that even under the guidelines there's the notion that even if sexual activity with somebody who is underage is illegal and unconsensual, it can still be voluntary. And I think that there is the question of whether a per se application takes into consideration the specific circumstances, context, and facts of a case. For example, and I'm going to make a hypothetical just to – that is not the facts of this case, but if there's a 17-year-old victim and a 19-year-old offender and they urinate on each other's feet. This is disgusting. Some people may find it degrading, but then there's the question of whether there should be the per se application of a four-level enhancement. Four levels is quite a bit, and it can add years to somebody's sentence. So in that context, is a per se application correct? Because trial courts, in my experience and also in this court, they seem to infer that there is the per se application. And much of the S&M enhancements are often with prepubescent children or adolescent children. And that is – you can see those cases in the government as well as in the defense briefs that that is the overwhelming case majority. And that is a completely separate argument because it has completely separate facts than what are at bar today. And so in the – Ms. Siddoway, could you take the language of the guideline provision and tell me what sort of test you would have us announce to apply it going forward? Yes, Your Honor. There – trial courts should be – Two minutes, counsel. Two minutes, please. Thank you. Trial courts should be able to take into consideration the context and circumstances when applying the S&M enhancement to minors over the age of 16. And I think that would allow trial courts the opportunity to look at the specific facts and circumstances of a case before applying it. And that's needed in order to properly assess that – the specific case characteristics and for purposes of equity. Because otherwise, if there is the per se application, it's conflicting with other parts of the sentencing guidelines that delineate ages. Counsel, you have said that the hypothetical that you just gave us does not track the facts of this case. And in fact, we don't have a victim and defendant who are two years apart as your hypothetical indicated. We have an adult male, clearly, and an underage girl. And so you seem to be arguing here, though, that because this was a consensual relationship, that that's the context that you would like the trial court to be able to account for. But just based on the facts of this case, didn't the victim's statements at sentencing dispute the consensual nature of this alleged relationship? Respectfully, Judge, the defense hasn't said it was consensual. We said it was voluntary, which is a word that was used in the guidelines. So I just wanted to emphasize that the defense never said that it was consensual. But it was voluntary. And the government had stated during a status hearing – and this would be in DE 155 – that it was voluntary, that there wasn't allegations of force. Then they put in their sentencing memorandum that there was. And in the victim impact statement, there's inferences that it was. And that's, again, why the context of the other cases, the other cases of statutory rape involving this victim, are very significant to rebut the misrepresentation that there was any kind of force that was involved. Because for much of the case, there was no allegations of any force. And this did not come out until purposes of sentencing. So for 3553 factors, any allegations of force should have been considered by the trial court. And when they were made by the government and the government opened that door, the defense should have had the opportunity to rebut. Now, regarding the other point that I heard the court ask, and this would be regarding the application of the S&M enhancement to the case at bar, because it's not the facts of the hypothetical. There's a question of voluntariness. And, again, voluntary is the word used in the guidelines. Even the trial court, when it watched specifically the two videos, commented, I don't know where there is joint activity. And what specifically the trial court said, I don't know whether to call it reverse or joint activity for which each party is responsible. I don't know. And so the trial court seemed to question whether it could consider the voluntariness or the joint activity of the victim. Because in cases where the victim is 16, in this case, and she engages in activity that was said throughout much of the case to be voluntary, then there's the question if she is doing activity to my client that would otherwise qualify as S&M. But if she was voluntary in that, then it raises the question of whether that application of the enhancement should be per se, or whether the judge should look at the facts of this case before deciding whether to apply it. All right, Ms. Pitaway, thank you very much. We've taken you beyond your time, but you've saved your four minutes for rebuttal. Yes, Your Honor. Mr. Haggerty. Good morning, Your Honors. May it please the Court, my name is Tom Haggerty on behalf of the United States. I'm joined virtually by trial counsel, Carmen Weinberger. Now, this court should affirm the district court sentence. First, appellate sentence is both procedurally and substantively reasonable. The district court properly enhanced appellant sentence for production of child pornography that portrayed sadomasochistic content. Finally, at the sentencing hearing, the district court properly excluded evidence that the minor victim was also a victim in other sexual exploitation cases. Now, turning towards the procedural reasonableness in terms of the sadomasochism enhancement, the district court's application of the sadomasochism enhancement under the sentencing guidelines was procedurally reasonable. I want to begin by noting that only one video or image needs to contain sadomasochistic depictions in order for the enhancement to apply. Now, the district court, the trial court, reviewed one image and four videos, and I'll talk about each in turn. The first image portrays the appellant with one hand, his left hand, wrapped around the throat of the victim. She's nude, her breast is exposed, and from the image, they're presumably having sex. Now, the image shows appellant using force against the victim and restraining her. I would turn to this court's decision in the United States v. Hall, where this court used the Webster's Dictionary for the definition of sadism and found that this term includes the infliction of pain upon a love object as a means of obtaining sexual release, delight in physical or mental cruelty, and the excessive use of cruelty. Now, this court did not err, nor did it clearly err, in the application of the enhancement for this image. The image depicts Mr. Rogers, the appellant, restraining the victim with his hand wrapped around the victim's throat. I mean, do we even have to get into whether the conduct is sadistic or masochistic, given that the guideline provision also refers to other depictions of violence, and a hand around the throat, I think, can be seen as violent conduct? Yes, Your Honor, the sentencing guidelines for sadomasochism define it as sadistic or masochistic conduct or other depictions of violence. So, yes, the appellant's hand wrapped around the victim's throat would qualify as violent conduct because he's restraining her, and the portrayal contained within the image portrays violent conduct. So, if you find that this image contains sadomasochistic conduct, the court need not look any further to the other images. But turning towards the second video, the second video portrays the appellant urinating on the victim in the bathtub. She's fully nude, and on her knees, you can see her bare breasts exposed, as well as her pubic area. Now, the Seventh Circuit has held that the sadomasochism enhancement applies to conduct that not only is physical in nature, but is also degrading and humiliating. Specifically in U.S. v. Turkin, the Seventh Circuit found that a video of men urinating on a prepubescent minor qualifies for this enhancement. But, Mr. Haggerty, we have a case that, at the very least, suggests that the sexual act would have to be painful. That's United States v. Hall from 2002. So, what do you do with the language in that case? Well, in terms of the pain that Your Honor had mentioned, I would also ask this court to look at United States v. Carroll from the Eleventh Circuit. It was in 2002, where depictions of children chained and bound qualify as sadistic for the purposes of the enhancement. So, bondage also qualifies, not necessarily violence or pain. But hold on, hold on. But bondage can be painful. I mean, you don't put somebody in chains or in restraints without causing some pain. And it seems to me that that's distinguishable. So, if you want us to adopt the Seventh Circuit view, you're going to have to tell me how that comports with the language in our decision in Hall. That the sexual act, quote-unquote, would have to be painful. Well, I would ask this court to include conduct that is both humiliating and degrading in terms of the enhancement for sadism. Not just an infliction of pain, violence, or physical force. So, you're asking us to disregard the language in Hall? Because the language in Hall is that it would have to be painful. If you're asking us to add conduct that would not be painful, you're asking us to vary from what Hall said, are you not?  If you look in Hall, Hall refers to the Webster's Dictionary of Sadism, which also includes mental cruelty. Specifically, it says that sadism includes the infliction of pain, which we've discussed, upon a love object as a means of obtaining sexual release. And then it goes on to say delight in physical or mental cruelty and the use of excessive cruelty. So, Hall, I don't think, can be read as it being exclusively the need of physical pain or force. I would submit to the court that the defendant urinating on the victim in the bathtub would qualify as mental cruelty because it's in a degrading or humiliating manner. Now, turning towards the other two videos, the third and fourth video are similar. They depict the minor digitally penetrating the anus of the appellant, and the fourth video also includes his licking of his anus. Similarly, the government would submit that both these videos portray conduct that qualifies for the enhancement because they're degrading and humiliating to the minor victim. However, the court does not need to look further than the first image or the second video because that contains sadistic or masochistic conduct. Now, turning to the next issue of the trial court's limiting of evidence with regards to the victim's other criminal cases in which she was a victim, the district court's determination as to the kinds of information that it considers at sentencing is reviewed for abuse of discretion. Now, the district court in this case struck the correct balance. The court considered evidence that the victim was in contact with a state attorney's office victim witness coordinator, that there was other criminal cases involving older men, that she was using narcotics and drugs with those older men. However, he excluded the testimony or did not consider the testimony or evidence regarding her being sexually exploited by other men. In this case... What was the time lag between those events and the ones at issue in this case? I don't believe it's in the record. However, it appears that it was in or around the time. It was prior to the conduct with Mr. Rogers or the appellant. However, it seems that it was in or around the time that the appellant had met the victim. However, it's the government's position that that evidence is wholly irrelevant in this case. The fact that other men sexually abused the victim has no relevance to appellant's sentence. First of all, the government cites the Rule 412. But I would... Even though the rules of evidence don't apply at sentencing, the government cites the Rule 412, colloquially referred to as the Rape Shield Law, as a matter of good public policy. The district court should not have and did not consider this evidence. And he properly excluded the evidence because it has no bearing on the sentence of Mr. Rogers. Now... Well, how did the government... Part of Ms. Pitaway's argument, although not all of it, is that the defense was trying to introduce evidence of her sexual activity with other men because the government was trying to portray her not simply as a minor who had been victimized, but as someone who was a totally innocent victim. And I know those terms are very difficult to sort of gauge, and there might be slight semantic distinctions, but they were trying... She says they were trying to counter the depiction of the minor here as someone who would have never engaged in this sort of activity had it not been for Mr. Rogers. How do you respond to that? I think it was clear from the record in terms of what was before the district court how the victim was actually recovered in this case was that she contacted the State Attorney's Office Victim Witness Coordinator. So it was clear that she had been a victim in other criminal cases at the time that she was recovered from... with appellant and that he was arrested. And the fact is that the court considered that she was using drugs with older men, that she was listed as a victim in other criminal cases. So I do think that the court struck the correct balance and considered evidence that supported appellant's position that the victim is not a quote-unquote innocent child and would never otherwise have done this type of activity. But the district court did exclude, and I believe properly excluded, irrelevant evidence regarding the sexual activity of the victim with the men, because in fact she could not consent to either the sexual activity with Mr. Rogers, the production of the child pornography with Mr. Rogers, or the sexual activity with the other men. In fact, it was criminal sexual activity in those cases. So I believe the district court did not abuse its discretion in excluding such evidence. Now, in conclusion, the government asks that this court affirm the trial court sentence in this case. If you have no further questions, I will rely on my briefs. All right. Thank you very much. Thank you, Judge. Ms. Pitaway, you have your four minutes of rebuttal. Yes, Your Honor. May it please the court and counsel, there are two facts that I heard the trial court inquire on, I'm sorry, that I heard the appellate panel inquire on that I wanted to touch on, and one of them was the time lag in the timing of the other statutory rape cases in state court relative to the prosecution of Mr. Rogers. These were all in the same calendar year, and in the transcript of the sentencing, and this is DE 153 on page 83 in the proffer, it states that these two were from earlier in the spring, and the case at bar was from the summer. So that's the time frame for the court. To follow up on one of the questions that Judge Branch asked you during your initial argument, had you been able to introduce the evidence of her sexual activity with the other men, how would you have argued that or how would counsel have argued that to the sentencing court? What difference would that have made in the way that you portrayed Mr. Rogers or his conduct? It would have been very limited, and it would have been to the effect that the court should take into consideration all of the circumstances when determining the depiction and the representation of the victim, specifically whether the depiction of the innocent child, you know, with all the circumstances supported weighs in the factor as an aggravating factor. It was to rebut the aggravating factor of the victim's status and the impact on the victim. So it would have only been limited to that aspect regarding that representation. As to the allegation of force, it would have gone toward to say, Your Honor, that the victim had the ability to be able to seek assistance while she was with Mr. Rogers. In fact, she had been in contact with the state attorney's office, the victim advocate there, and during that time she didn't reach out for help. When the victim ended up making contact with the victim advocate at the state attorney's office, it was a status to check in with the prosecution of the other cases. So the victim had not sought assistance to get out of Mr. Rogers' house or out of where he was at, and she didn't make those attempts to get out of the situation. And so the lack of allegations regarding force should speak to rebutting the allegations and inferences of force that later developed in this case. And that is the context of how it would be used. The defense did attempt to make safeguards to prevent any harassment of the victim. The defense did not subpoena the victim. It attempted to get the testimony out of the case agent. First of all, the defense did not expect the victim to be present, and second of all, it was also to reduce harassment. It wasn't necessary to try to get this information out through the victim. So the manner in which it was done was narrowly tailored to avoid any harassment, and the way in which the information would have been provided to the trial court to rebut the representations would also be narrowly tailored. In rebuttal on one comment that the government made regarding the still image with the hand on the throat, the defense actually won the objection in the PSR to using the conclusory term of choking, and what the defense argued there is that it was a still image and that in the image there was not the appearance of any pressure, and that to use the word choking was concluding something that the image simply didn't support. So the defense did not concede on that point. What did the district court say, if anything, about its interpretation of that image? Yes. The trial court viewed the image and held that it found that the image had a depiction of violence and that it was, quote, not a momentary act, end quote, even though it was a still image. All right. All right. Thank you very much, Ms. Pitaway. Yes, Your Honor.